BARRON. *et ux. v.* CITY OF MEMPHIS.

(*Jackson.* April Term, 1904.)

1. **EMINENT DOMAIN.** What constitutes a taking of property.
There is a taking of property within the constitutional provision requiring just compensation for private property taken for public use, where the property is either actually appropriated by the State or one of its agencies or the common and necessary use of said property is rendered impossible or seriously interrupted.

Constitution cited and construed: Art. 1, sec. 21.

Cases cited and approved: Telegraph Co. v. Electric Light, etc., Co., 93 Tenn., 492; Hamilton County v. Rape, 101 Tenn., 222; Pumpelly v. Canal Co., 13 Wall., 166.

2. **SAME.** Same. Case in judgment.
The defendant, a municipal corporation, enlarged a pier supporting one of its bridges in order that the pier might be sufficient to bear the additional weight of one of the city's sewers and thereby diverted the current of the stream, so that it overflowed plaintiff's lot, destroyed a large part of it by erosion and undermined the pillars of the house standing on the lot. Plaintiff brought trespass.
*Held*: There was a taking of the plaintiff's property within the constitutional provision that no man's property shall be taken or applied to public use without just compensation.

Constitution cited and construed: Art. 1, sec. 21.

3. **CONSTITUTIONAL LAW.** Power of legislature over private property.
The legislature can not authorize the taking of private property for a public use without just compensation, and any statute attempting so to do, is, to that extent, unconstitutional.

Cases cited and distinguished: Williams v. Taxing District, 16 Lea, 531.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby County.—J. P. YOUNG, Judge.

BELL, TERRY & BELL, for Barron et ux.

W. B. HENDERSON, for the City of Memphis.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This is an action in the nature of trespass on the case to recover damages for injuries alleged to have been inflicted by the city of Memphis on the property of Mrs. Venorah Barron. The suit was brought by her and her husband. Upon the trial a demurrer interposed by the defendant below to the evidence of plaintiffs was sustained. To this action of the court plaintiffs assign error.

The testimony discloses that Mrs. Barron is the owner of a lot in the city of Memphis, the rear of which extends to and is bounded by Bayou Gayoso, a stream which passes through the city and discharges into the Mississippi river. Over this stream, and near the property of Mrs. Barron, a bridge has been standing for many years. The center of this bridge was supported by a stone pier.

Some time before the institution of this suit, under the direction of the municipal authorities, this central pier was extended or enlarged in order that it might bear the additional weight of one of the city's sewers.   In making this extension the pier was so constructed that it stood, when completed, at a small angle across the channel of the stream.   The result was to divert the current of the bayou and throw it across the lot of Mrs. Barron, so that by a process of erosion a large part of it has been destroyed.   To such extent did this injury go that the pillars of a house standing on the lot were undermined and to relieve it from threatened destruction the house was moved by plaintiffs in error.

Upon these facts it is maintained by the owners that there was a taking of Mrs. Barron's property within section 21 of article 1 of the constitution of Tennessee, which is in these words: "No man's property shall be taken or applied to public use  .  .  .  without just compensation."

To put this provision in operation, it is not essential that there should be an actual appropriation of the property taken to the public use.   "It is enough if any right of the owner respecting the thing owned be impaired so that he cannot apply the thing to all the uses of which it was formerly capable."   Taylor on Corporations, section 173.

Mr. Woods is in accord with this statement of the rule.   In his work on Nuisances (section 762) he says: "Whenever the exercise of right (asserted) operates to

destroy an easement incident to real property, or amounts to an actual physical invasion of property by some agency that produces injury thereto or imposes a burden thereon, this is a taking of property."

The texts of these authors are supported by a citation of many cases, and we think it may be safely stated that, even in the absence of the appropriation by the government, or one of its agencies, to a public use, yet if, in carrying on its work, it seriously interrupts the common and necessary use of the property by its owner, this is a taking within the meaning of the constitutional provision. Much more so must it be when by the act of the government the invasion amounts to a practical destruction of a part of the whole of the property.

As was said by the supreme court of the United States in *Pumpelly* v. *Canal Co.*, 13 Wall., 166, 20 L. Ed., 557: "It would be a very curious and unsatisfactory result if, in construing a provision of constitutional law, . . . it shall be held that, if the government refrains from the absolute conversion of real property to the uses of the public it can destroy its value entirely; can inflict irreparable and permanent injury to any extent; can, in effect, subject it to total destruction—without making any compensation, because in the narrowest sense of that word it is not taken for public use. Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as these stood at common law, instead of the government, and making it an authority for invasion of private right under the

pretext of the public good." So in that case it was held where persons, authorized by an act of the legislature of Wisconsin to construct a dam across an outlet of Lake Winnebago, in doing this work threw the waters of the lake so as to render of little value the land of an adjoining proprietor, that this was a taking within the constitutional provision of that State. The same rule was announced with regard to facts similar in *Conniff* v. *San Francisco,* 67 Cal., 45, 7 Pac., 41; *Eaton* v. *Boston, etc., R. R. Co.,* 51 N. H., 504, 12 Am. Rep., 147, and in *Baltimore, etc., R. R. Co.* v. *Reaney,* 42 Md., 117.

But it is unnecessary to resort to cases determined by other courts for the purpose of finding illustrations of the application of this rule, as our own reports furnish authority for the contention of plaintiffs in error; cases in which this court has given an interpretation of this provision sufficiently liberal to protect owners from any direct or indirect invasion of their property rights.

In *Telegraph Company* v. *Electric, etc., Co.,* 93 Tenn., 492, 29 S. W., 104, a telephone company sought to recover from a street railway corporation compensation for injuries received from an overflow of electricity from the latter's works to the practical destruction of the works of the former, and it was ruled that this was a taking for which the telephone company was entitled to compensation. In dealing with this phase of the case the court said:

"The injury by 'conduction' is a taking of the property of the telephone company by the street railway

company within the constitutional provision requiring compensation to be made for private property taken for public use. It imposes a burden upon the telephone company's property that impairs its use and value. The loss is fixed and definite in amount. It makes no difference that no material thing was taken, or that the loss resulted, not from contact of material things, but through the agency of the subtle and impalpable electric fluid. The important consideration is that a thing of value has been taken from the telephone company for the benefit of the street railway company, as the representative of the public, and for that thing compensation must be made."

In *Hamilton County* v. *Rape,* 101 Tenn., 222, 47 S. W., 416, it was held the impairment or destruction of the right of ingress or egress of adjoining property by a change of grade in a public highway, under the authority of the county, was a taking of property for which its owner was entitled to compensation.

Other cases in our State might be referred to, but these are sufficient to the present purpose. We think, if the serious interference with the telephone service as the consequential result of electricity in the first, and the impairment of the right of ingress and egress in the last of these cases entitled the property owner so injured to compensation, *a fortiori* it would follow that, where property is invaded, and to a great extent destroyed, by a government agency, as in the present case,

its owner can invoke the protection of the provision of the constitution in question.

But it is insisted that the city of Memphis is protected by reason of an act of the legislature (chapter 96, p. 111, Sess. Laws 1881) exempting taxing districts, of which the city of Memphis was one, from liability in certain cases, and the case of *Williams* v. *Taxing District,* 16 Lea, 531, is relied on for this contention. To this it is sufficient to say, if it be conceded that this act is still operative for the protection of the city of Memphis, and if it was necessary to hold that such an action as is complained of in this case falls within its terms, it then would be equally necessary for this court to hold it to that extent unconstitutional; for "the legislature has not the power . . . to authorize the taking of private property for a public use without compensation." *Telegraph, etc., Co.* v. *Electric, etc., Co.,* supra; Taylor on Corporations, section 173.

So it follows that *Williams* v. *Taxing District,* supra, gives no color to the insistence of the defendant in error in the present case.

The judgment of the court below is reversed, and the case is remanded for the ascertainment of damages.