IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 9, 2012 Session

## CHARLES RAYMOND LOVEDAY ET AL. v. BLOUNT COUNTY, TENNESSEE ET AL.

**Appeal from the Circuit Court for Blount County**
**No. L-17304      David R. Duggan, Judge**

**No. E2011-01713-COA-R3-CV - Filed July 24, 2012**

Charles Raymond Loveday and his wife, Virginia Hope Loveday (collectively "the Plaintiffs"), filed this action in January 2011 against Blount County and the Blount County School Board (collectively "the Defendants") to recover for flood damage to their property allegedly caused by the construction of a new school next to the Plaintiffs' property. The school was built in 2007. The Plaintiffs allegedly sustained "permanent" damage in 2008, 2009 and 2010. The Defendants filed a motion to dismiss asserting that the action was barred by the statute of limitations for a taking. The trial court granted the motion. The Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Robert W. White and Joe Nicholson, Maryville, Tennessee, for the appellants, Charles Raymond Loveday and Virginia Hope Loveday.

Robert N. Goddard, Maryville, Tennessee, for the appellees, Blount County, Tennessee, and Blount County School Board.

## OPINION

### I.

### A.

The Plaintiffs own property located at 343 South Old Grey Ridge Road, Friendsville ("the Property" or "the Plaintiffs' Property"). They reside on the Property and have utilized it "for grazing and feeding of livestock and for the growing of crops and livestock feed." According to the complaint,

> [o]n or about February, 2007, the Defendants began construction on the Union Grove Elementary School, located at 330 Old Grey Ridge Road, Friendsville, TN, 37737, a plot of land owned by one of the Defendants that is contiguous to [the] Plaintiffs' Property.
>
> On or . . . shortly after construction began, [the] Plaintiffs became aware of water runoff damage to their Property caused by the runoff from the Defendants' property, including but not limited to the failure of the Defendants' detention and runoff pond, which was constructed at the direction of [the] Defendants.
>
> As a result of the water damage, the Property is no longer usable for grazing and feeding of livestock or for growing crops and livestock feed.
>
> Such water damage is *permanent in nature*.

(Emphasis added.) The complaint further alleges that the flooding amounts to a taking of the Property because the Plaintiffs "have been put in a position that they now own property that they cannot utilize to its full economic value." The complaint states that the "diminished value" of the Property, *i.e.*, "the difference between the market value of the Property prior to the flooding and the current market value," is $1,000,000.

Alternatively, the complaint alleges that the new school is in a "defective condition" that constitutes a nuisance. The complaint states that

[the] Defendants' construction project of a new school at the location described above, resulting in the flooding of [the] Plaintiffs' contiguous Property, annoyed and disturbed [the] Plaintiffs' ability to freely use their Property and rendered its ordinary use and physical occupation uncomfortable.

[The] Defendants received notice of the annoyance and disturbance from the *permanent flood damage* to [the] Plaintiff's Property [in] 2008, 2009 and 2010 when [the] Plaintiffs reported the annoyance and disturbance to representatives of the Defendants in a meeting on several occasions.

At the meeting between the Plaintiffs and [the] Defendants' representatives in 2009, [the] Plaintiffs were promised that the Defendants would undertake complete remediation of the flooding problem.

This annoyance and disturbance remains and is ongoing in nature.

(Emphasis added.)

Finally, the complaint alleges that the Defendants owed a duty to the Plaintiffs which they breached by "causing and/or allowing water to flood [the] Plaintiffs' Property . . . resulting in *permanent damage* and a taking of [the] Plaintiffs' Property." (Emphasis added.)

The Defendants filed a motion to dismiss "pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure . . . based on the applicable statutes of limitations contained in T.C.A. § 29-16-124 . . . ."[1] The motion asserts that "when the Plaintiffs' cause of action is actually based in inverse condemnation there is no cause of action for common law nuisance or negligence." The motion asserts, alternatively, that a common law nuisance claim or a

_____

[1]This is the statute of limitations applicable to takings. The statute states, in pertinent part:

> The owners of land shall, in such cases, commence proceedings within twelve (12) months after the land has been actually taken possession of, and the work of the proposed internal improvement begun . . . .

Tenn. Code Ann. § 29-16-124 (2000).

negligence claim is subject to the Governmental Tort Liability Act's one-year statute of limitations, and is therefore barred.

B.

The trial court granted the motion to dismiss. The order dismissing the case states, in pertinent part, as follows:

> [i]n the present case, and by their own factual allegations as contained at paragraphs 31 and 40 of their complaint, [the] Plaintiffs knew as early as 2008 that the injury to their property was permanent. They claim to have put [the] Defendants on notice of permanent flood damage as early as 2008, and indeed claim to have delivered such notice to [the] Defendants in 2008, 2009, and 2010. In addition, [the] Plaintiffs failed to file their complaint within one year of the time that [the] Defendants' representatives allegedly promised to remediate the problem, and yet failed to do so; despite the fact that [the] Plaintiffs knew that the injury to their property was permanent in nature.
>
> [The] Plaintiffs did not file their suit until January 27, 2011, more than one year after the time that they knew they had suffered a permanent injury to their property, and more than one year after their meeting with [the] Defendants' representatives. Given that the key factor, in determining when the statute of limitations begins to run, is when the property owner knows that the injury to his property is a permanent injury rather than a temporary one, and given that [the] Plaintiffs had such knowledge in 2008 despite any alleged representations of [the] Defendants' representatives in 2009, [the] Plaintiffs did not timely file their complaint.
>
> Accordingly, the Court finds that [the] Plaintiffs' complaint, with respect to their inverse condemnation claim, is barred by the applicable statute of limitations.
>
> [The] Plaintiffs have also stated claims for common law nuisance and negligence. This Court has already found, however, that [the] Plaintiffs have stated a *prima facie* case for inverse condemnation. Once a court determines, under the facts

of a case, that a taking has occurred, a plaintiff is precluded from recovering on a temporary nuisance or negligence claim. ***Peterson v. Putnam County, Tennessee***, [No. M2005-02222-COA-R3-CV, 2006 WL 3007516 (Tenn. Ct. App. M.S., filed Oct. 19, 2006)]; ***Large v. Greene County, Tennessee***, [No. E2008-02764-COA-R3-CV, 2009 WL 5083482 (Tenn. Ct. App., E.S., filed Dec. 28, 2009)].

It is also noted that to the extent [the] Plaintiffs are seeking damages from [the] Defendants, even if their complaint could proceed, their claim for damages would be barred by the applicable one-year statute of limitations contained within the Tennessee Governmental Tort Liability Act, Tenn Code Ann. § 29-20-305(B). (It is also noted that the statute of limitations found at Tenn. Code Ann. § 29-20-305(B) would not bar [the] Plaintiffs' action for an injunction for abatement of the nuisance.)

Nevertheless, because [the] Plaintiffs have stated a cause of action for inverse condemnation and are, therefore, precluded from pursuing a temporary nuisance or negligence claim against [the] Defendants, it is not necessary for this Court to apply the statute of limitations found within the Governmental Tort Liability Act.

Accordingly, . . . [the] Defendants' motion to dismiss is granted. . . .

## II.

The issue as stated verbatim in the Plaintiffs' brief is:

Did the Trial Court err in granting [the Defendants'] Motion to Dismiss under Rule 12.02(6) of the Tennessee Rules of Civil Procedure by finding that the [Plaintiffs] were precluded from pursuing claims for nuisance and negligence, when they had alternatively pled a cause of action for inverse condemnation, when the cause of action for inverse condemnation has passed before the filing of the Complaint in this cause?

III.

Our standard of review in this case is as articulated in ***Trau-Med of America, Inc. v. Allstate Ins.***, 71 S.W.3d 691, 696-97 (Tenn. 2002):

> A Rule 12.02(6) motion to dismiss only seeks to determine whether the pleadings state a claim upon which relief can be granted. Such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof, and, therefore, matters outside the pleadings should not be considered in deciding whether to grant the motion. *See **Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.***, 986 S.W.2d 550, 554 (Tenn. 1999). In reviewing a motion to dismiss, the appellate court must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. *See **Pursell v. First Am. Nat'l Bank***, 937 S.W.2d 838, 840 (Tenn. 1996). It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *See **Doe v. Sundquist***, 2 S.W.3d 919, 922 (Tenn. 1999); ***Fuerst v. Methodist Hosp. S.***, 566 S.W.2d 847, 848 (Tenn. 1978). Great specificity in the pleadings is ordinarily not required to survive a motion to dismiss; it is enough that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." ***White v. Revco Disc. Drug Ctrs., Inc.***, 33 S.W.3d 713, 718 (Tenn. 2000) (citing Tenn. R. Civ. P. 8.01). We review the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions. ***Id***.

IV.

The Plaintiffs concede that their complaint states a claim for inverse condemnation and that the inverse condemnation claim is time-barred. They argue that the complaint also states a claim for nuisance and negligence and that they have a right to plead and proceed on the alternative theories even if their inverse condemnation claim is barred. They rely on Tenn. R. Civ. P. 8.05(2) which states:

A party may set forth two (2) or more statements of a claim or defense alternatively or hypothetically. When two (2) or more statements are made in the alternative and one (1) of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he or she has, regardless of consistency.

The Plaintiffs argue that the trial court's reliance upon *Large v. Greene County, Tennessee,* No. E2008-02764-COA-R3-CV, 2009 WL 5083482 (Tenn. Ct. App. E.S., filed Dec. 28, 2009) is misplaced because *Large*, unlike this case, was decided on a motion for summary judgment. They argue that the essential facts were undisputed in *Large* whereas in the present case the facts are still in dispute. The essence of the Plaintiffs' argument, as we understand it, is that some set of facts consistent with the complaint may entitle them to relief under the nuisance claim, therefore the motion to dismiss should have been denied.

We acknowledge that our opinion in *Large* involved a summary judgment, but that distinction is not dispositive. In *Large*, we relied upon our earlier opinion in *Peterson v. Putnam County*, No. M2005-02222-COA-R3-CV, 2006 WL 3007516 (Tenn. Ct. App. M.S., filed Oct. 19, 2006). *Peterson* was also a summary judgment case, but our opinion in that case includes the following discussion of two Supreme Court cases that affirmed dismissals of nuisance claims based on the determination in each case that the complaint alleged a taking rather than a nuisance:

> The first issue with respect to the plaintiffs' common law nuisance claim – *i.e.*, whether the plaintiffs' proper cause of action was a claim for inverse condemnation, rather than a temporary nuisance claim – has been addressed by the courts of this State on numerous occasions. . . . Where the adverse effect amounts to a "taking" of property by the government, the plaintiff's proper remedy is one for inverse condemnation under the eminent domain statutes. *See* T.C.A. § 29-16-123, 124; *see Pleasant View Util. Dist. v. Vrandenburg*, 545 S.W.2d 733 (Tenn. 1977); *Monday v. Knox County*, 417 S.W.2d 536 (Tenn. 1967); *Smith v. Maury County*, No. 01A01-9804-CH-00207, 1999 WL 675135 (Tenn. Ct. App. M.S., filed Sept. 1, 1999).
>
> In the case of *Monday v. Knox County*, the plaintiff filed a common law nuisance action against the county, alleging that the county's construction of a nearby highway had caused

excessive amounts of water to collect on the plaintiff's property. 417 S.W.2d at 536. The plaintiff sought a mandatory injunction. *Id*. *The trial court dismissed the plaintiffs' suit, holding that the plaintiffs' allegations amounted to a "taking" by the county and that the exclusive remedy was a claim under the eminent domain statutes*. *Id*. The Supreme Court affirmed, stating that "there has been a taking of [the plaintiff's] property for public use for which the remedy is reverse condemnation proceedings and [the county] would not be liable on the theory of a nuisance." *Id*. at 537. Notably, the plaintiff argued that the intrusion only amounted to a temporary nuisance because the condition causing the damages could be remedied by certain changes in the construction of the highway. *Id*. The Court rejected this argument by stating that "the Court has no authority to order such change in construction; for to do so would in effect be constructing public roads by judicial order." *Id*.

Similarly, in ***Pleasant View Util. Dist. v. Vrandenburg***, the plaintiffs filed an action to enjoin a utility district from discharging thousands of gallons of waste water on their property. 545 S.W.2d at 734. The utility district moved to dismiss the plaintiffs' suit, primarily arguing that its actions amounted to a "taking," rather than a nuisance. *Id*. The utility district asserted that the plaintiffs' proper remedy was an action for inverse condemnation, and furthermore, that any inverse condemnation action was now barred by the one-year statute of limitations for such actions. *Id*. at 734-35. *The trial court granted the utility district's motion to dismiss*. *Id*. at 735. As noted by the Supreme Court, the Court of Appeals reversed and remanded, concluding that the plaintiffs' suit was " 'not a suit for damages in reverse condemnation [but] is primarily an injunction suit praying for injunctive and general relief.' " *Id*. (bracketing in original). The Supreme Court reversed the Court of Appeals and affirmed the trial court's judgment. *Id*. at 736. . . .

*Id*. at *9 (emphasis added).

One key fact that distinguishes a claim of temporary nuisance from a taking by a governmental entity is damage to the property that is permanent in nature. *Id*. at 5-6. "Only

-8-

when the injury is permanent in nature can there be a 'taking' within the contemplation of the statute; and until there is a 'taking' the statute of limitations does not begin to run." *Id*. (*quoting* **Knox County v. Moncier**, 455 S.W.2d 153, 156 (Tenn. 1970)). Conversely, there is a taking and the statute of limitations begins to run when the owner of the damaged property is "charged with knowledge that the injury to his property [is] permanent." *Id*. (*quoting* **Moncier**, 455 S.W.2d at 156). One indication that the injury is permanent and therefore a taking is damage to the market value of the property. *Id*. at 4 (*citing* **Jackson v. Metro Knoxville Airport Auth.**, 922 S.W.2d 860, 865 (Tenn. 1996)).

We conclude that even if **Peterson** allows a plaintiff to maintain alternative pleadings sounding in both nuisance and taking, it does not allow a plaintiff to proceed on a nuisance theory when the allegations of the complaint allow only one conclusion, *i.e.*, that he or she knew that the damage to the property at issue is permanent. We further hold that the allegations in the complaint in the present case only allow the conclusion that the damage to the Plaintiffs' property is permanent and that they knew it was permanent more than one year before they filed the complaint in 2011. The complaint states that " [o]n or shortly after construction began [in 2007], [the] Plaintiffs became aware of water runoff damage to their Property." The complaint specifically states that the "water damage is permanent." The complaint states that the water damage reduced the value of the Plaintiffs' Property by $1,000,000. Even the "nuisance" count of the complaint refers to the damage as "permanent flood damage" which was reported to the Defendants as such in a meeting between the parties in 2009. The damages are alleged to be the result of a "defective condition" in the construction. The "negligence" count repeats allegations of "permanent damage" and diminished value that date back to the construction of the school. Allegedly, the Defendants promised to undertake remediation in 2009, but that was more than one year before the filing of the complaint. Even if there was additional damage in 2010, it is well established that the statute of limitations begins to run when the injured party knows the nature of the injury; he or she cannot wait until the full extent of the injury becomes apparent. *See* **Peterson** at *12. We also note that the complaint contains not one allegation that the alleged nuisance is "temporary." The Plaintiffs point to the allegation that the "disturbance remains and is ongoing." That language is entirely consistent with the numerous allegations of permanent damage characteristic of a taking. It follows that the trial court did not err in granting the Defendants' motion to dismiss.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants, Charles Raymond Loveday and Virginia Hope Loveday. This case is remanded, pursuant to applicable law, for the collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE